---
Mitchell *v.* Read.
---

---

## MITCHELL *vs.* READ.

Where, during the existence of a copartnership, new leases of the premises occupied by the firm as its place of business are obtained by one of the partners, to himself, without the consent of his copartner, for a term to commence before the partnership ends, such leases will be declared to be held by the lessee as trustee for the firm.

And the same rule would apply in a case where the partnership was depending on the will of the partners, to be dissolved by either on notice, and the lease was obtained before notice was given.

But where the partnership is to continue for a specified term, and there is nothing in the articles of copartnership which contemplates any extension of the term, and it is not claimed that the firm have any right of renewal, as to either of the leases held by them, there is nothing in the relation of the parties, under the partnership agreement, that prevents either partner from taking a new lease of the premises occupied by the firm, to himself alone, for a term to commence after the expiration of the partnership, although obtained before its termination.

Where two partners held the premises occupied by them, under a lease run-

Mitchell *v.* Read.

ning to the 1st of May, which had been assigned to them by H., in which a reversion was reserved to H. of two days, at the end of the lease, so 'that the lease to the partners would expire with the 28th of April, during which period, H. and not the firm, was the holder of the lease, and the right of renewal, if any, in him; *Held*·that one of the partners had the right, as against the other, to obtain during the partnership, for his own benefit, a renewal of the lease from the 1st of May.

The true rule is, that a partner cannot do any act that interferes with the business, or affects the interests, of the firm, for his individual benefit, and if he does so, he is bound to account to the firm therefor; but when his acts are independent of the business and interests of the partnership, and relate to a period beyond its existence, such rule does not apply. *Per* INGRAHAM, J.

APPEAL, by the plaintiff, from a judgment rendered at a special term, on a trial before the court without a jury, dismissing the complaint, without costs.

The parties were copartners in the business of hotel keeping, in the city of New York. The complaint alleged that during the existence of the copartnership the defendant had secretly taken, in his own name, renewal leases of the premises occupied by the firm, for a term to commence on the expiration of the copartnership and the leases under which the premises were held, which renewal leases he claimed to hold in his own right, and for his individual benefit. And the prayer was for judgment that the defendant might be declared and adjudged to have taken the said leases and become the lessee of the premises after the 1st day of May, 1871, for the benefit of the said copartnership, and not for his own individual benefit, and that he holds the same as trustee of the said copartners, Mitchell & Read; and that he might be required to assign and transfer the said leases, and each of them, to the said copartnership of Mitchell & Read; that he might be enjoined and restrained from selling, incumbering, surrendering or otherwise disposing of the said leases, or either of them, or of any right or interest therein, except under and in accordance with the judgment to be rendered in this action;

and that the plaintiff might have such other relief, or such further relief in the premises, as might be just and equitable.

The following facts were found by the court.

1st. That on the first day of November, 1864, D. D. Howard, the defendant Read and James H. Wall, Jr., became partners under written articles of that date, whereby they agreed to conduct the hotel business as proprietors of the Hoffman House, in the city of New York, under the name and style of Read, Wall & Co. That by the terms of the said articles the copartnership was to continue during the existence of the two leases first next hereinafter mentioned of said hotel ("or for six years and six months from November 1, 1864,") unless sooner terminated at the option of said Howard. 2d. That said business was conducted on premises known as Nos. 1111 and 1113 Broadway, owned by Glorvina R. Hoffman, wife of Samuel V. Hoffman, and No. 1115 Broadway and No. 2 West 25th street, owned by R. J. Livingston, which communicated therewith. 3d. That the premises owned by Mrs. Hoffman were, by written lease dated and executed January 29, 1864, leased by her and her husband to the defendant Read, from May 1, 1864, for the term of "seven years," at the yearly rent of $12,000. And the premises owned as aforesaid by Mr. Livingston were, by him and his wife, leased to the said Howard from the 1st day of November, 1864, for the term of "six years and six months," at the annual rent of $13,000. 4th. That the lease of the premises owned by Mrs. Hoffman was assigned by Read to the said Howard, in consideration of $1, by assignment bearing date April 8, 1864. 5th. That on the 1st day of June, 1865, the plaintiff Mitchell, the defendant Read, and the said Wall, Jr., having acquired all the interest of the said Howard in the premises and business, by articles of that date, became copartners in the business of keeping said hotel, and by the terms thereof the said copartnership commenced on the said 1st day of June, and the

Mitchell *v.* Read.

same was "to continue until the 1st day of May, 1871." 6th. That at the time of the transfer of the interest of the said Howard, on the 1st day of June, 1865, the latter executed an agreement of that date, whereby he agreed that the last day of the term of the leases hereinbefore mentioned as made by him to the said Mitchell, Read & Wall, as before mentioned, should, in the event of the payment of certain notes therein mentioned, and of the rent due up to the end of said leases, "at maturity or within ten days thereafter," in said agreement mentioned, said reservation should belong to the said Mitchell, Read & Wall. That said notes were paid and the rent, so far as it has become due, but a portion of said rent, which has not yet become due, has not been paid. 7th. That also, on June 1, 1865, the said Howard leased to the said Mitchell, Read & Wall the premises as aforesaid owned by Mrs. Hoffman and Mr. Livingston, for the term of five years, eleven months and twenty-eight days therefrom, at the yearly rent of $26,000. 8th. That about the time of the dissolution of the copartnership between Mitchell, Read & Wall, the 25th day of September, 1865, the defendant bought the interest of Wall, which the latter had conveyed to the said Howard, and Howard, by agreement dated October 24, 1865, conveyed all such interest and also all his own interest in said property, premises, business, and the leases made by said Mrs. Hoffman and by Livingston aforesaid, and under which the said premises were at that time held. That on the 25th day of September, 1865, the copartnership of Mitchell, Read & Wall was dissolved, and on the 1st day of January, 1866, articles of copartnership were executed by the plaintiff and defendant, wherein they stated that "they had been copartners together since the 25th day of September, under the name of Mitchell & Read in the business of keeping the Hoffman House as a hotel; that the said Mitchell owns an equal undivided third part, and the said Read two equal undivided third parts of all

the estate, leases, property, assets, effects and good will of the late firm of Mitchell, Read & Wall, heretofore dissolved, as they existed at the time of such dissolution." And the said articles also provided that the partnership should continue until the 1st day of May, 1871. 9th. That on the 17th day of November, 1866, Ann E. Brittain executed a lease to the plaintiff and defendant of the premises No. 3 West 24th street, in said city, and also a piece of land, the rear of lot No. 1, in said street, about nine feet in depth, and extending the width of said lot, for the term of four years and five months from the 1st day of December, 1866, at the yearly rent of $10.000. 10th That in the judgment of the said plaintiff and defendant it became necessary to provide a place for a bar-room, the lease of the bar-room before mentioned being about to expire, and with that end in view the said lease was executed. That in view of such necessity, said premises, No. 3 West 24th street, were connected with the rear of the premises then known as the Hoffman House, by making a passage and a room in the intervening space of about 20 feet between the premises. That the first story of said premises was thereupon fitted up, and is and has ever since been used for the purposes of a bar-room, and the remainder is and has been ever since used for the purposes of the said hotel. 11th. That the cost of connecting, fitting up as aforesaid and furnishing, was a prudent and judicious expenditure for the purposes of the existing lease, and the said hotel has realized a large profit thereby. 12th. That prior to the 1st day of November, 1868, the plaintiff and defendant having deemed it expedient and judicious to secure the use of the dwelling house No. 1 West 24th street, a lease was accordingly executed therefor, by surrendering the old lease of No. 3 West 24th street, and a new lease was executed by the said Mrs. Brittain to the said plaintiff and defendant, bearing date on that day, whereby the premises Nos. 1 and 3 were leased as afore-

Mitchell *v.* Read.

said for "two years and six mônths, from the said 1st day of November, 1868," at the yearly rent of $17,500; and by the terms of that lease the lessees covenanted to surrender the premises at the expiration of the term to the lessor, and thereupon the said premises No. 1 were connected with the said Hoffman House, substantially as the premises No. 3 West 24th street had been, and were fitted up and furnished, and were, and since have been used in connection with said hotel, and the cost of so doing, and all expenditures made upon the hotel property were judicious and prudent expenditures for the purposes of the existing leases, and the said hotel has realized a large profit thereby. 13th. That on the 20th day of April, 1869, the said Mrs. Hoffman and her husband executed to the defendant, a lease of the premises owned by her as aforesaid, for five years from the 1st day of May, 1871, at the annual rent of $24,000; and the said Livingston and wife likewise executed a lease, dated the 29th day of April, 1869, to the defendant, of the said premises owned by him, for five years from the 1st day of May, 1871, at the annual rent of $20,000. And the said Ann E. Brittain made a lease, dated the 21st of January, 1869, to the defendant, of the said premises owned by her, for ten years from May 1, 1871, at the rent of $17,500. 14th. That the said new leases last mentioned are of great value, and were obtained by the said Read without any notice to the plaintiff of his intention to apply therefor. 15th. That the defendant claims that the said leases are his property exclusively, and refuses to recognize or acknowledge that the same belong to the partnership, or that the plaintiff has any interest therein. 16th. That the said hotel, at the commencement of this suit, was and still is in operation, and that the furniture and fixtures, stock and property used in carrying on the said business are valuable, and the business there conducted has been and is profitable.

The court found, as conclusions of law: 1. That the

defendant, Read, was the sole owner of the leases executed to him as aforesaid, for the term commencing May 1st, 1871, and that the plaintiff had no right, title nor interest in or to them, or either of them. 2. That the defendant have judgment accordingly, without costs.

The plaintiff, by his counsel, duly excepted to the foregoing findings and conclusions of law, and to each and every of the same, jointly and severally, and to each and every part thereof.

The plaintiff, by his counsel, also duly excepted to the decision of the court, and to each and every part of the same, and filed exceptions thereto.

The following opinion was delivered at special term, by the justice before whom the cause was tried:

INGRAHAM, J. The plaintiff and defendant were partners, conducting the Hoffman House, under articles of partnership which would expire by their own limitation on the 1st of May, 1871. The leases of the premises expire on the same day, or the day previous. In 1869, at various times, the defendant obtained new leases of the premises to himself, from the 1st of May, 1871. The plaintiff claims that such leases must be held by the defendant as trustee for the firm, and asks for the judgment of the court to that effect.

There can be no doubt, if such new leases had been obtained to commence before the partnership ended, that they would have been the property of the firm, and the defendant would have been declared the trustee of the firm in regard to the same. Nor can there be any doubt but that the same rule would apply in a case where the partnership was depending on the will of the partners, to be dissolved by either on notice, and the lease obtained before notice was given. And this also has been held to be the rule when one of the partners died, and the business of the firm was continued for the benefit of all inter-

Mitchell *v.* Read.

ested during the residue of the term stated in the articles of partnership.

The principle upon which these cases rest, is that a relation of trust and confidence exists between partners, which prohibits either from taking any advantage of the other, by taking to himself interests necessary for the benefit of the business of the firm, whether the partnership extends beyond the time at which the act is done, or is unlimited in its character, to be terminated at the will of either.

The present case differs from the cases above referred to, in this respect, viz., the partnership, as agreed to originally, will terminate on the 1st of May, 1871. The renewed leases all commence on the 1st May, 1871. It is not claimed that anything in the articles of partnership contemplates any extension of the term, or that the firm have any right of renewal to either of the leases held by them. The question in this case then is, whether there is anything in the relation of the parties under this agreement, that prevents either partner from taking a new lease of the premises occupied by them, to commence after the expiration of the partnership, although obtained before its termination.

Most, if not all, of the cases referred to on the trial differ from the present case in these respects, as will appear from a reference to the cases cited.

In *Moody* v. *Matthews*, (7 *Ves.* 185,) there was a right of renewal in the wife, which rendered the act of the defendant, in obtaining the lease, fraudulent. In *Featherstonehaugh* v. *Fenwick*, (17 *Vesey*, 298,) the partnership was to continue for fourteen years, and the lease was obtained during its continuance, and either partner had a right to terminate the partnership on notice. The duty which each partner owed to the other in this case rested on the power which each had to terminate the partnership, and required good faith on the part of all to avoid the advantage which one would obtain over the other by obtaining

the lease before dissolution. In *Alden* v. *Foreman*, (3 *Swans.* 489,) the firm had built on premises, where the lease was held in the name of one of the partners. In *Clegg* v. *Edmondson*, (8 *De G. M. & G.* 787,) the partners who obtained the lease were managing partners, and agents in managing the business, while the partnership was a continuing one, subject to dissolution on notice. In *Clegg* v. *Fisenwick*, (1 *M. & G.* 294,) after the death of a partner, the business was continued by the other partners, for the benefit of all, using the partnership property. The lord chancellor put his decision upon the ground that the old lease was the foundation of the new one, and that the tenant's right of renewal, in that particular case, gave the partners the right to the new lease. In *Clements* v. *Hall*, (2 *De. G. & J.* 174,) one partner died, and the survivor having possession of the partnership property, kept the representative of the deceased partner in ignorance of the state of the business, until he had obtained the renewal in his own name. So in *Leach* v. *Leach*, (18 *Pick.* 68,) the partnership was to continue for five years; one partner died during the first year, and the business was continued, under authority given by the testator, to the end of the term, before which time a new lease was obtained, commencing before the end of the five years. In *Burrell* v. *Bull*, (3 *Sandf. Ch.* 15,) the partner taking the lease was deputed to obtain the renewal on the joint account of all, and took the lease to himself. In *Gibbes* v. *Jenkins*, (*Id.* 131,) the lease was subject to a mortgage, and the new lease was held to be subject thereto.

In all these cases there was an expiration of the partnership, in fact, before the negotiations for, or acceptance of, the new lease by one member of the firm, to the exclusion of another; and the decisions of the courts have been uniform in such cases, that the excluded partner had such an interest, at the time as to prevent the other partner from obtaining a lease in his own name.

No case has been cited, and I have been unable to find any, in which the duration of the firm was limited to a particular day, without any provision for its extension, and when the lease contained no covenant for renewal, in which the rule adopted in the cases above referred to was held to be applicable. All the other cases which have been referred to are cases of trusts, where the executor or trustee has taken to himself a lease in which the *cestui que trust* had an interest, and to which the rule before referred to is particularly applicable.

This case must therefore be decided by the answer to the inquiry, whether at the time when this lease was taken by the defendant there was a duty owing by him to the plaintiff, or any other confidence reposed in him as to the future lease of the premises, which prevented him from taking the same to himself.

The evidence shows that the lease had been the property of Read, excepting two lots on 24th street, and were assigned to D. D. Howard, and by him a sub-lease was granted to the plaintiff, the defendant and one Wall, who was at the time a partner. In such sub-lease a reversion is reserved to Howard, of two days at the end of the lease, so that the lease of these premises to the parties will expire with the 28th of April next, and Howard, and not the firm, will be the holder of the lease during that time. Wall sold out his interest, through Howard, to Read, who now owns two thirds, and Mitchell one third, of the partnership property. The lease of the lots 1 and 3 W. 24th street belongs to Mitchell & Read till the 1st of May, 1871.

It seems to be difficult, under this evidence, to apply to this case the rule adopted in the cases above referred to. That was founded upon the principle that, during the continuance of the partnership, whatever was done with the partnership property, or affecting the interests of the firm, by either of the partners, should be held to be for the benefit of the firm, whether in the name of the indi-

vidual partner or of the firm. In the present case the partnership ends on the 30th of April next. There is no provision for its continuance. The firm have no right to lease after the 29th of April, and neither party owes to the other any duty, or is called upon to exercise any confidence in regard to the business of the firm after that day. Their duties and relations to each other cease on the 30th inst., unless it may be for a settlement of their accounts and a division of their property; and there seems to be no claim, or right, or interest of either of the partners in the leased property, after that date. The case of *Anderson* v. *Leman*, (4 *Seld.* 236,) recognizes the right of one partner to purchase the fee of the land which was leased to the firm, when no fraud was practiced. The true rule is, that a partner cannot do any act that interferes with the business, or affects the interest, of the firm for his individual benefit, and if he does so he is bound to account to the firm therefor; but when his acts are independent of the business and interests of the partnership, and relate to a period beyond its existence, such rule does not apply.

There is another fact in this case which presents this point with more force than is usually the case, viz., the lease to the partnership expires on the 28th of April. During the 29th and 30th of April, Mr. Howard will own the lease and have the right of possession; and if the lease contained a covenant of renewal, he would be entitled to such renewed lease, and not the firm.

At the time of the expiration of the partnership, April 30th, neither of the partners will have any right to these leases held by them previously from Howard. If the leases had expired a month before, it could hardly be pretended that the firm would have any claim on the new leases. The shorter period during which it will be held by Howard, must have the same effect, viz., to terminate the right of the firm to them, and to prevent the operation of the principle on which the old cases were decided—

that the new lease was a graft upon the old stock. Such could not be the case here; because the lease, at the commencement of the new term, was the property of Howard, and not of the partnership. It is not without some hesitation that I have arrived at this conclusion ; not because of any doubt in my own mind, but because the contrary rule has been so strenuously urged upon the argument of this case, founded upon decisions to which I have referred, but which, in my opinion, differ materially from the present.

Judgment for the defendant.

*A. J. Vanderpoel* and *John E. Burrill,* for the appellant.

I. The leases for the Hoffman House were, at the time of the formation of the partnership between Mitchell and Read, on 1st of January, 1866, held by them as partners, and formed a part of the partnership assets, as is recited in the articles.

II. It is conceded that the renewal leases were obtained by Read, without any notice to Mitchell, and, in the language of the cases, " clandestinely and behind his back."

III. The defendant's counsel concedes that where the partnership is for a limited term, and either partner takes a lease commencing within the term, the firm can claim it as partnership property; and they further concede that where the partnership is for an indefinite term, any lease taken by one partner for the premises used as their business, may be claimed by the firm; but they contend that where the partnership is for a limited term, neither partner is precluded from taking a lease commencing after the expiration of that term.

IV. The distinction thus attempted to be made between a case where the renewal lease taken by one partner is to commence before the partnership has actually been terminated, by a notice, if " at will," or by the expiration of the time, " if limited by agreement," does not exist. 1. It

never has been made in any case, and it rests on no principle. 2. The principle on which courts of equity interfere, is that a fiduciary relation exists between the partners, which prevents either partner from obtaining any advantage over the other by a renewal of a lease, without the consent of his copartner. (*Moody* v. *Matthews,* 7 *Ves.* 185, note. *Featherstonhaugh* v. *Fenwick,* 17 *id.* 298. *Clegg* v. *Edmonston,* 8 *DeGex M. & G.* 787. *Alder* v. *Fournae,* 3 *Swanst.* 489. *Anderson* v. *Lemon,* 8 *N. Y.* 236. *Clements* v. *Wall,* 2 *DeGex & Jones,* 173. *Clegg* v. *Fishwick,* 1 *Macn. & Gordon,* 294. 2 *Spence's Eq.* 208. *Tastor* v. *Marriott, Ambler,* 668. *Rowe* v. *Chichester, Id.* 715.) All of which involved rights in connection with renewal leases. In *Clements* v. *Hall,* (2 *DeGex & Jones,* 173,) the renewal was obtained after the death of one partner, and, of course, therefore, after a dissolution of the copartnership, and the term of the renewal lease commenced at the expiration of the old lease. In *Clegg* v. *Fishwick,* (1 *Macn. & Gord.* 294,) the renewal lease was procured during the existence of the partnership, and the term created by it commenced at the expiration of the partnership; and it is on all fours with the present case. In *Tastor* v. *Marriott,* (*Ambler,* 668,) the renewal lease was obtained by the tenant for life, before the expiration of the old lease. In *Rowe* v. *Chichester,* (*Id.* 715,) the renewal lease was obtained before the termination of the interest of the party declared to be trustee, and commenced at the expiration of the former lease. 3. The same principle is laid down in all the elementary writers, (*See Lindley on Part.* 495; *Story on Part.* §§ 174, 175; *Parsons on Part.* §§ 224, 226; *Collyer on Part.* §§ 181, 182; *Comstock* v. *Buchanan,* 57 *Barb.* 140;) and is recognized, and many authorities cited by counsel in support, in *Laffleur* v. *Naglee,* (9 *Calif.* 662;) *Lacy* v. *Hale,* (37 *Penn.* 360;) *Clegg* v. *Fishwick,* (1 *Macn. & G.* 294;) *Clements* v. *Hale,* (2 *DeGex & Jones,* 173.) 4. In the following cases, in our own courts, the same questions are involved, and decided on principles

which control the present case: 'In *Anderson* v. *Leman,* (8 *N. Y.* 236,) Judge Gardiner says: "In a note to *Moody* v. *Matthews,* (7 *Vesey,* 185, *Sumner's edition,*) it is said, as a deduction from adjudged cases, that, with a possible exception in favor of a *bona fide* purchaser, it seems to be a universal rule that no one in possession of a lease, or a particular. interest in a lease, which lease is affected by any sort of equity in favor of a third person, can renew the same for his own use only, but such renewal must be construed as a graft upon the old stock."

V. That the principle of the interference of courts of equity is as claimed by the appellants, will appear from the following cases: *Keech* v. *Sandford,* (1 *Lead. Cases in Eq.,* *Hare & Wallace's Notes, p.* 84,) lays down the principle that a lease renewed by a trustee or executor in his own name, even in the absence of fraud, and upon the refusal of the lessor to grant a new lease to the *cestui que trust,* shall be held upon trust for the person entitled to the old lease, and numerous cases are cited in support. It is also there laid down, that where a tenant for life of a lease, under a settlement, renews the lease in his own name, he is held a trustee for the parties interested, under the settlement; and further, that if a mortgagee renew a lease, the renewal is for the benefit of the mortgagor; and, per Lord Chancellor Nottingham, "the mortgagee here doth but graft upon his stock, and it shall be for the mortgagor's benefit"—reciting various cases; and, it is added, the case will not be altered by the expiration of the lease before the renewal by the mortgagee. (*Pickering* v. *Vowles,* 1 *Bro. C. C.* 197. *Colegrave* v. *Manby,* 6 *Madd.* 72. *Luckin* v. *Rushworth,* 2 *Ch. Rep.* 113. *Darrell* v. *Whitchot, Id.* 59. *Rakestraw* v. *Brewer,* 2 *P. Wms.* 511.) And so a person acting as agent, or in any other fiduciary capacity, for one having an interest in a lease, cannot renew for his own benefit. (*Edwards* v. *Lewis,* 3 *Atk.* 538. *Griffin* v. *Griffin,* 1 *S. & L.* 352. *Mulvany* v. *Dillon,* 1 *Ball & Bent.* 417.)

VI. The American cases are to the same effect.    In the notes to *Keech* v. *Sandford,* (1 *Lead Cases in Eq.* 92,) it is stated : " Wherever one person is placed in such relation to another, that he becomes interested for him, or with him, in any subject of property, he is prohibited from acquiring rights in that subject antagonistic to the person with whom he is associated. (*Leach* v. *Leach,* 18 *Pick.* 68, 76. (*See also Davoue* v. *Fanning,* 2 *John. Ch.* 252 to 258. *Holdridge* v. *Gillespie, Id.* 30.)    In the latter case Chancellor Kent says : " According to the cases of *Manlove* v. *Bale,* (2 *Vern.* 84,) and *Rakestraw* v. *Brewer,* (2 *P. Wms.* 511,) the additional term comes from the same old root."    *    *. It will be recollected that the same idea is conveyed by the language of the court in 8 *DeGex M. & G.* 787, cited before, and in 2 *Ch. Rep.* 59 and 113, also cited before. The same doctrince is laid down in the case of *Heager's Executors,* (15 *Serg. & Rawle,* 65, 66.)    In *Huson* v. *Wallace,* (1 *Rice's Eq.* 2, 4, 7,) all the cases are considered, and the court say : " It is to be observed that in most of the cases there was no covenant for renewal, so that it was at the option of the lessors to renew or not, but as it is said there is a good will in favor of the former tenant which gives him an interest in the renewal." . (*See also to same point, Clements* v. *Hall,* 2 *DeGex & Jones,* 173.    *Clegg* v. *Fishwick,* 1 *Macn. & G.* 294.)    The cases have gone so far as to hold "that one of two joint tenants, or tenants in common in possession, cannot purchase in an outstanding title for his own benefit, as immoral; because it will be against the reciprocal obligation to do nothing to the prejudice of each other's claim, which the relationship of the parties created. (*Van Horne* v. *Fonda,* 5 *John. Ch.* 388, 407.  *Baker* v. *Whiting,* 3 *Summ.* 475, 495.  *Dickinson* v. *Codwise,* 1 *Sandf. Ch.* 214, 225.    *Wood* v. *Perry,* 1 *Barb.* 115, 134.)

VII. Taking a lease during the existence of the copartnership, which secures to one partner the possession of the premises where the business is carried on, and where, from

its nature, it must be carried on, and secures to him also the exclusive benefit of the good will, which is the product of the partnership, capital time and labor, and is a partnership asset, and enables him to appropriate to his own use the improvements which have been made at the partnership expense, is just as much a breach of faith, and a violation of the fiduciary relations existing between the partners, whether the new lease is to commence before or at the expiration of the partnership. · The law demands the utmost good faith on the part of the respective partners to each other, and that neither party shall take advantage of his relations or connections with the other, to promote his private interest. The principle for which we contend does not deny to either partner the right to acquire the renewal of a lease, provided he acts in good faith, and places his partner on the same footing with himself, but it does prevent one partner from secretly and behind the back of the other, taking such renewal lease for his own benefit. The defendant, if successful on his claim: 1. Will obtain the benefit of all the fixtures and improvements which were placed, at great cost, upon the premises, and which, by the original leases, were to be left on the premises at the expiration of the term. The evidence warrants, it seems to us, the conclusion that many of the more costly and permanent repairs were not justifiable, except on the theory that the leases were to be renewed. 2. The defendant receives the benefit of the reputation which the hotel bar acquires, and which constitutes the good will of the business, and is a partnership asset. 3. The value of the furniture of the hotel is materially affected by the fact whether the leases are renewed, and who has the benefit of such renewal. 4. The plaintiff's interest in the good will, and in the assets generally, is depreciated, and that of the defendant appreciated, if the latter has the exclusive benefit of the leases.

VIII. The right of the party, in whose favor the trust

is declared, to have the benefit of the renewal, does not depend on the fact whether, by custom, courtesy or con- tract, there was a right of renewal. The courts act on the principle that the new term is grafted on the old stock, "that it comes from the same old root," and "that the existence of the old lease furnished a facility to obtaining the new." (*Holdridge* v. *Gillespie,* 2 *John. Ch.* 30. *Clegg* v. *Edmonston,* 8 *DeG. M. & G.,* 787. *Luckin* v. *Rushworth,* 2 *Ch. R.* 113. *Darrell* v. *Whitchot, Id.* 59. *Huson* v. *Wall- ace,* 1 *Rich. Eq.* 2, 4, 7. *Clements* v. *Hall,* 2 *DeG. & J.,* 173. *Clegg* v. *Fishwick,* 1 *M. & G.,* 294.) Nor is the right of the party to claim an interest in the renewed lease affected by the fact, that the landlord declined to give the renewal lease to such party.

IX. There is no force in the objection that it was not within the scope of Read's power, as a partner, to bind his partner by a lease, or other contract, to take effect after the termination of the copartnership. 1. The plaintiff, seeking to have the benefit of such lease, must of course take it *cum onere,* and be bound by all its covenants and conditions. 2. The same objection, if sound, would apply to every case in which one party claims the benefit of some act done by another, where adjudged to have acted as trustee. In such case there is no primary lia- bility, but the adoption of the act necessarily creates such liability.

X. There is no force in the objection, that the new leases contain covenants against assignments, and such fact is no reason why the defendant should not be declared to be trustee. (*Alden* v. *Fouracie,* 3 *Swanst.* 489.) It is not necessary that the leases be assigned, but if they are, it will be by operation of law. (*Platt on Covenants,* 415. *Comyn on Landlord,* 239. *Taylor on Landl.* 408.) Even if the assignment would produce a forfeiture, that is no reason why the defendant should not be compelled to per-

form the decree of the court, which has nothing to do with the consequences to him.

XI. The plaintiff is entitled to a reversal of the judgment, and to judgment in his favor, as claimed in the complaint. (*Marquat* v. *Marquat*, 12 *N. Y.* 336. *Edmonston* v. *McLoud*, 16 *id.* 545. *Griffith* v. *Marquardt*, 17 *id.* 28. *Beach* v. *Cooke*, 28 *id.* 529, 538.)

*Geo. W. Cotterill*, *W. O. Bartlett* and *John K. Porter*, for the respondent.

I. The appellant never contracted for, nor acquired any interest, legal or equitable, in the estate for years, commencing after the expiration of the partnership, and which was conveyed to the respondent, in his own right, by the owners of the reversion. 1. The existence of a fiduciary relation creates no disability to deal, in respect to property not embraced in the trust. (*a*) "The circumstance that two parties stand to each other in the relation of trustee and *cestui que trust*, does not affect any dealing between them unconnected with the subject of the trust." (*Knight* v. *Majoribanks*, 2 *M. & G.* 10.) (*b*) So, where the president of a company contracted for his own benefit, in respect of a steamboat route, which the company was not in a condition to continue, the court held that he was not accountable to the company. Judge INGRAHAM, in delivering the opinion, said: "I do not understand the relation of principal and agent, or of trustee and *cestui que trust*, involving any such obligation. The law protects the party against the agent, or trustee, in the use of its property and rights, but not beyond them; and does not prevent the performance of acts which could not result in damage to the principal, or which could not conflict with the interests of the company. The being president of an insolvent corporation cannot prevent him from doing what that company had lost all ability to do, even if its existence continued. Where the company has virtually ceased

to exist, and its powers have been taken away, I think the reason and policy of the rule ceases also—because no duty rested upon the agent to run the line for the company, after the authority and ability of the company to do so had terminated." (*Murray* v. *Vanderbilt,* 39 *Barb.* 156, 157.) (*c.*) The same principle is affirmed in the Supreme Court of the United States. (*Wheeler* v. *Sage,* 1 *Wall.* 518.) 2. This was not the case of a church, a charity, or a crown lease, where the lessee is, by courtesy and custom, entitled to a renewal, and where equity recognizes a vendible interest. (*Gibbes* v. *Jenkins,* 3 *Sandf. Ch.* 130. *Lee* v. *Vernon,* 5 *Brown's Parl. Cases,* 10.) 3. Nor was it the case of a lease, to which, either by custom, or by contract, was attached any equitable right, or expectation of renewal. 4. The future term acquired by Read, was one which the partners never owned, and which was not to commence until after the time fixed, under seal, for the expiration of the partnership, and after the day on which the lessees had covenanted to surrender the premises to the lessors. 5. It was not within the scope of Read's power, as a partner, to sign in the name of the firm, a lease for ten years from and after the expiration of the partnership; and to have done so, would have been a plain breach of duty. 6. A lease to Read, to take effect after the dissolution of the firm, was in no sense the property of the firm. 7. It constituted no part of the good will of the business of the partners, for they both agreed, in writing, to close the partnership, and to surrender the premises to the lessor on the 1st of May, 1871. (*a.*) " A party, upon forming a copartnership with another, having agreed to leave at the end of the term," (as both parties here agreed in their leases,) "the place where the business was carried on, cannot, on retiring, claim an interest in the good will of the business, and, in accounting with his partner, who continues at the same place, have an allowance for the value of such good will." (*Van Dyke* v.

*Jackson*, 1 *E. D. Smith*, 419.) (*b.*) So, in a case where, on the expiration of a firm of bankers, one of them, continuing business in the same building, was sought to be charged by the other with the value of the good will, Thompson, C. J., said: "Their business expired by its own limitation. They had no exclusive right in the business, that existed, for a moment, after the firm dissolved, or any sole ownership of it, as against any others, and these are the criteria of property in good will, according to the English rule." (3 *Merivale*, 441. *Story on Partn.* § 99.) "How can there be a good will of a business in favor of a member of a firm, where the firm has ceased to exist by its own limitation, and no exclusive right to follow the business in that place belongs them? In that case, as a distinct property, it is gone." (*Musselman's Appeal*, 62 *Penn.* 83.) 8. Read was not authorized, by the articles of partnership, to contract for Mitchell after the expiration of the firm, and there is no pretense of any such agency outside of the articles. 9. There was, therefore, no constructive fraud in virtue of the partnership—and no actual fraud in virtue of any other authority, or arrangement, with Mitchell—in contracting in his own right, as he lawfully might. 10. In so contracting, he was under no obligation to Mitchell, and was neither called upon to announce his intention in advance, nor to offer to Mitchell an interest in a lease commencing after the termination of the partnership. (*a.*) "If R. enters into partnership with P., to continue for three years, and so much longer as R. should continue lessee of the stone quarries leased to him by M., and at the expiration of the lease, R. refuses to renew the lease with M., it having a covenant for renewal at his option, the partnership expires with the lease. R. was not bound to renew the lease and continue the partnership, if not expressly bound to do so by the partnership agreement. If articles of partnership provide for its continuance during the existence of a lease, renew-

able at the option of one of the partners, it is at the option
of such partner to continue the partnership by renewing
the lease, or to end it by refusing to renew. He has a
right to refuse to renew, for the purpose of ending the part-
nership. That a partner, having the option to renew such
lease and continue the partnership, may have acted and
talked as if he intended so to do, will not bind him to
renew it, if he made no contract to do it." *Held,* accord-
ingly, that the firm could not claim the benefit of a new
lease, taken by R. from the heirs of M., on different terms,
and thus not being a mere renewal of the former lease.
(*Phillips* v. *Reeder,* 18 *N. J. Eq. Rep.* 95.) (*b.*) Thus, in
*Atchison* v. *Fair,* 3 *Drury & Warren,* 525,) the trustee of a
lease for life, obtained a lease to himself of a term com-
mencing with the expiration of the life, and the court
decreed that it did not enure to the benefit of the trust.
Lord Ch. *Sugden,* said: "Is there any equity to follow
what a trustee obtains in a property not subject to the
trust? * * * To say that I am bound to follow the
trustee through all the acts of his life, and that if he took
different lands by a different lease from the same party,
I am to hold that the old trusts attached upon them, would
be most unreasonable. I have no disposition to extend
the doctrine, which has been carried quite far enough."
(*c.*) In *Nesbitt* v. *Tredennick,* (1 *Ball & Beat.* 48,) Lord Ch.
Manners limited the doctrine in the same way. He said :
" The case of *Lee* v. *Vernon* shows that the principle ought
not to be carried too far." (*d.*) In *Maunsell* v. *O'Brien,*
(1 *Jones Irish Exch. R.* 184, 189,) Chief Baron Joy, exposed
and condemned the mistaken notion, " that where a per-
son is clothed with a fiduciary character, and in that
character becomes possessed of an interest in lands held
under a determinable lease, any acquisition by him of a
new interest in those lands is a continuation of the old
interest, and what is technically termed a ' graft ' on it."
* * * "We are called upon to go much further than

any case has hitherto gone, an objection which alone has much weight with me." (*e.*) The case of *Lee* v. *Vernon*, (5 *Brown's Parl. Cas.* 10,) emphatically affirms and applies the limitation, that in order to subject the new lease to the trust, it must be for a term commencing before the time fixed for the expiration of the trust relation. 11. No case is cited by the other side, and none can be found, holding that where the partnership is for a limited term, either partner is precluded from taking a lease, commencing after the expiration of that term. 12. We concede, that where the partnership is for a limited term, and either partner takes a lease commencing within the term, the firm can claim it as partnership property, to that extent. 13. We also concede, that where the partnership is for an indefinite term, any lease taken by one member of the partnership, for the premises used in their business, may be claimed by the firm; for the presumed purpose, in such a case, is to obtain an advantage by abridging the partnership. Such was the case of *Anderson* v. *Lemon*, (4 *Selden*, 236. *S. C.* 4 *Sandf.* 552.) Such also was the case in 17 *Vesey*, 298. 14. In the present case, the lessees held as tenants of Howard, who was entitled for the last day of the original term, and who, if there had been an equitable right to a renewal, would have been the party equitably entitled. 15. But here, what Read bargained for and bought, was an outstanding future estate, which never belonged to the firm, and was impressed with no trust in favor of Mitchell.

II. The court properly refused to find in accordance with the appellant's requests. 1. On the questions of fact, the requests were simply to find against the evidence. 2. The request of a finding that the defendant, by his acts and declarations, led the plaintiff to believe that the partnership would be continued beyond the time limited by the articles, was properly denied. (*a.*) There was no such allegation in the pleadings. (*b.*) Mitchell was a witness on

Mitchell *v.* Read.

the trial, and did not testify that he ever so believed—much less that Read led him so to believe. (*c.*) In his deposition, in his own behalf, Mitchell swore that Read never had any conversation with him in regard to a renewal, or extension, of any of the leases. (*d.*) Read utterly denied, on oath, the truth of any such allegation. (*e.*) Even if such a fact had been alleged in the complaint, and proved on the trial, it would have been wholly immaterial. (*f.*) Thus, in *Phillips* v. *Reeder*, (18 *N. J. Eq. Rep.* 98,) Chancellor Zabriskie says: "The fact, that during any part, or the whole, of the partnership, the defendants may have expected to renew the lease, and may have so said and acted, will not take away their right to exercise their choice, unless what they said, or did, amounted to a new contract with the complainant." 2. On the questions of law, such findings as the appellant requested would have been plainly erroneous.

*By the Court,* GEO. G. BARNARD, J. I think this case was properly disposed of at the special term.

It is unnecessary to add any suggestions to the opinion rendered at the trial, by the justice trying the cause.

The judgment should be affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January 1, 1872. *Ingraham,* P. J., and *Geo. G. Barnard* and *Cardozo,* Justices.]