without jurisdiction (People *v.* Cassels, 5 *Hill*, 164; Ferguson *v.* Crawford, 70 *N. Y.* 253; Craig *v.* Town of Andes, 93 *Id.* 405; Hard *v.* Shipman, 6 *Barb.* 621–624; Harrington *v.* People, 6 *Id.* 607).

It was error, therefore, for the district court to reject the evidence offered by the defendant, and the judgment should be reversed.

As the proper party plaintiff is not before the court, a new trial will not be ordered. The appellant is allowed costs of the appeal.

---

# CROOK *v.* CROOK.

*N. Y. Common Pleas, before* Hon. HOOPER C. VAN VORST, *Referee;* 1887.

1. *Action to establish trust in renewal lease.*] A lessor who entertains negotiation with one occupying a fiduciary relation toward the lessee or his successors in interest, under circumstances sufficient to put him upon inquiry as to their interest in the lease, and their equitable right to a renewal, is chargeable with notice of that right.

2. *Right of renewal in donee of lease.*] The principle that the owner of a lease has an equitable right in respect to a renewal thereof, applies, although he became such owner by voluntary gift from the original lessee, and the renewal was obtained by such original lessee for his own benefit.

3. *The same: case in judgment.*] ·A father holding a lease of business premises for a term of years, gave and assigned it to his son, who thereafter held the lease and carried on the business for his own benefit; and, on the son's death, the father, while entrusted with the possession of the premises and estate, and before an administrator had been appointed, procured from the original lessor under circumstances sufficient to charge the· latter with notice of the equities of the estate, a renewal in his own name, and for his own benefit. *Held*, that in an action by the administrator for the purpose, the father might be charged as a trustee of the renewal of the lease for the benefit of his son's estate.

4. *The same.*] It is no objection to such relief that the administrator

would not have had power to contract for a renewal; nor is it necessary to decree an assignment of the renewal to the administrator. Under such circumstances he who took the renewal chargeable with a trust, may be adjudged to hold it for the use of the estate, and to be accountable for its value, and for any loss accruing out of its misuse.[*]

### Trial of issues.

Marcella F. Crook and another administrator of Samuel H. Crook, Jr., deceased, brought this action against Samuel H. Crook, the father of the deceased, and J. S. Barclay, the lessor of the premises occupied by the deceased, to obtain for the estate administered by the plaintiff the benefit of a renewal of the lease. It appeared that the original lease had been made by the defendant, J. S. Barclay, to the defendant, Samuel H. Crook, Sr., and that the latter had some years ago given and assigned the lease to his son, the deceased; and the son ever since, and until his death, conducted business on the leased premises and paid the rent by checks signed by himself. That on the death of the son, and the approaching expiration of the lease, the father, while in possession of the premises and of assets of the estate, and before the appointment of the widow as administratrix, had obtained a renewal in his own name. The evidence as to the circumstances of obtaining this renewal sufficiently appears in the opinion.

*Johnston & Tilton*, for the plaintiff.

---

[*] In Johnson *v.* Loughery (*Pa.* 1887) 6 *Central Rep.* 278, the court held that where the tenant is a firm, the right of renewal is a partnership asset, and, citing and following Speiss *v.* Rosswog, 96 *N. Y.* 651, that the same rule applies after dissolution, the original lease remaining partnership property for the purpose of liquidation. They further held that where a firm owning a lease is dissolved, and one of the partners, without the consent of the other, obtains for himself a new lease before the expiration of the old one, he must account to the other for the value of the expectancy thus appropriated by him, which value must be determined in proceedings for an account not as a certainty but as an expectancy only.

*Brewster Kissam,* for defendant, J. S. Barclay

*A. B. Tappan,* for defendant, S. H. Crook.

Hon. HOOPER C. VAN VORST, Referee.—The doctrine of a constructive trust arising upon the renewal of a lease by a trustee, or executor in his own name, and for his own benefit, rests upon the ground of public policy to prevent persons in such situations from acting so as to take a benefit to themselves (Keech v. Sanford, *White & Tudor's Lead. Cas. in Eq.* pt. 1, p. 49). And the rule that the renewal shall enure to the benefit of the cestui que trust is enforced even in cases where it is apparent that the lessor would not have renewed the lease to the cestui que trust, nor for his benefit; and even in cases where the cestui que trust is incapable, on account of infancy, of renewing the lease himself (Fitzgibbon v. Scanlan, 1 *Dow. Pr.* 261; Bennett v. Van Syckel, 4 *Duer,* 462, 469*; Mitchell v. Reed, 61 *N. Y.* 123, 136†; Huson v. Wallace, 1 *Rich. Eq.* [*S. C.*]).

In order to support the rule so laid down, the renewed lease is regarded not as a new creation, but as an integral part and ingrafted portion of the original lease (Mitchell v. Reed, *supra;* Moody v. Matthews, 7 *Ves. Jr.* 174, 185, with note).

It follows, as a corollary to these doctrines, that the same principle of public policy which prohibts a trustee from dealing to his own advantage with a lease in which his cestui que trust possesses a beneficial interest, renders it incumbent upon a landlord, when negotiating with one who occupies a fiduciary relation towards others, to act not hastily, but with a prudent and careful regard for their rights, and if he chooses to act hap-hazard, if he chooses to run the risks of violating the legal rule which prohibits the assignor of a lease from renewing the lease in his own name (Bennett v. Van Syckel, Mitchell v. Reed, *supra*) without the consent, assent or

---

* Appeal dismissed in 18 *N. Y.* 481
† Rev'g 61 *Barb.* 310.

knowledge of his assignee, he has only himself to blame, if, in the end, the courts will compel him to accept one as his tenant whom he has not chosen as such.　In this case I am not called upon to consider the effect of a covenant against assignment in a lease made by a landlord in ignorance of the trust, binding the action of the lessee.　For, in the present case, the assignment of the original lease from the defendant Crook to his son was on record; the business at No 12 Centre street had been conducted for years in the name of S. H. Crook, Jr., and the rent of the premises had been paid by checks signed by the son.　These facts were sufficient to place the landlord, at least, upon inquiry, and to lead him to act cautiously and at his peril.　For, aware of the facts, he could not plead ignorance of the rule of law, that the acts of the trustee are bound by the limitations of the trust and must enure to the benefit of the cestui que trust, if the latter so elect.　And the relative status of the plaintiffs and the defendant Crook, with its peculiar features, does not modify the rule of law.

But in this connection it may be added, that there is testimony to show that the landlord in making the renewed lease believed, and acted on the belief, that the defendant Crook, in applying for the new term, was in some way acting in the interest of the widow and child of his deceased son, and that an assignment of the lease would, in the end, be made to the widow, and the defendant Crook's son in-law, by whom he intended that the business should be carried on jointly.

It is testified to by Mr. Stacom, one of the administrators of the estate of the deceased Crook, that, after letters had been granted by the surrogate, he called upon the landlord, who, when he was asked "whether anything was said on the subject of an assignment, or sub-letting," answered as follows: " Yes, sir, he said that from the first he thought he was granting that lease for the benefit of the widow and child, and he thought so still, and thought, then, that it was for her interest." The widow also testified as follows : " I

asked Mr. Barclay (the landlord) if he did not think it strange that the old gentleman did not bring me there when he was going to take that lease, or consult me about it, and he said no; he had always seen such devotion existing between father and son. The old gentleman came there with tears in his eyes, and told him he was going to protect me and my child, that it was for my benefit and interest, and the child's, and that after he settled up his son's estate there would be a transfer of that lease the same as the original one, because he intended that I should take his son-in-law in as a partner; and Mr. Barclay said he had given the old gentleman verbal power to transfer that lease, and supposed it was a mutual agreement."

The assignment of the original lease from Crook to his son may undoubtedly be assumed to have been a voluntary gift on the part of the father. But though voluntary, it was none the less effective, and not merely vested in the son the right to occupy the premises, but clothed him with all the rights incident to tenancy. It was not a mere sub-letting; it was a placing of the son in his own position of tenant to the original landlord. It was a valid, executed gift, and invested him with all a tenant's rights, including that of renewal (Richards *v.* Delbridge, *L. R.* 18 *Eq.* 11, 13; Milroy *v.* Lord, 4 *DeG. F. & J.* 264).

Samuel H. Crook, Senior, might have adopted a different mode of procedure. He might have retained the lease and conducted the business in his own name, employing the son as his clerk and treating him as his heir. In that event he could have acted as master. He chose to do otherwise. He wished earnestly to advance his son's interest, and having established him in business, having placed him in the position of owner of the lease and of the trade, and having chosen to abrogate his authority as father and will maker, and to occupy the inferior position of clerk and steward, he could not escape all the liability and disabilities attendant upon the position he had voluntarily assumed. In consenting to become steward for his son, in all matters pertaining

to his stewardship, he was in duty bound to consider the son's interest only. Whether it were voluntary, or for a consideration, whether it were for a fixed period or determinable at will, while the father's stewardship lasted, and while he was in possession of the demised premises as the representative of the son and as his steward, he could not have renewed the lease for his own benefit, or to consummate his own individual purposes. And this we have seen would be true, whether the landlord would or would not have renewed the lease to the son, or to his representatives. And the death of the son did not of itself destroy the trusteeship. This the defendant realized, for he continued his care, oversight and interest as before. He evidently desired to preserve the business and its good will in the interest of his son's estate; if he so acted in the interest of others he was to that extent in fault.

The central fact in this case, that, at the time of the renewal Crook, Senior, was in absolute possession of the demised premises, and was the sole custodian of the bulk of the assets of his son's estate, of which the unexpired lease, with all its rights and incidents, formed part and parcel, to be used exclusively for its benefit, brings it fully within the strict rule laid down by courts of equity. The facts of the case, in my judgment, bring the defendant Crook and his action within the rule applicable to constructive trusts. The rule so long established and recognized as wholesome in its operation should not be relaxed. I think it should be applied here. Had the defendant Crook resigned his trust, had he notified the widow, or the representatives of his son, of his intention to act in his own behalf and not in the interest of his son's estate, a different question might have been presented. This he did not do; but secretly, without notice, before administrators had been appointed, while still acting as custodian and trustee, he obtained the renewal, and then endeavored to make the renewed lease a goad to urge the representatives of the deceased son along the way which he had chosen for them. If this were legal, the

trustee, or agent in charge of a business might at once, upon the death of his principal clandestinely renew the lease of the premises where the business was transacted, and then say, boldly, to the personal representatives of the deceased, " the premises on which I carried on trade and business for you have become mine exclusively, and I am entitled to demand from you whatever terms I think fit, as the condition for permitting you to conduct this business even one day in the settlement of the estate" (Featherstonhaugh *v.* Fenwick, 17 *Ves. Jr.* 298, 311).

Without discussing the question as to whether the good will of the business is an asset with which executors and administrators are chargeable, it is a matter of fact known to every business man, that opportunities often arise by which goods and chattels upon premises of which the lease may be secured, realize more, if sold en masse, then they would bring if sold piecemeal. · The possibility of renewing a lease and obtaining an established business in consequence, adds to the market-value of the assets of an estate. But, whatever the tenant right of renewal might be worth to the estate, it was the duty of the steward, until he had rendered up an account of his stewardship and resigned and laid down his trust, to do all in his power to protect the estate in its enjoyment.

· Authority is not wanting for the statement, that where the executors and administrators of a deceased lessee renew a lease in their own names, they may be compelled to hold the same as trustees for the estate (Huson *v.* Wallace, *supra.*)

If, therefore, this administrator and administratrix had, in the exercise of their discretion, renewed the original lease in their own names, they would have been compelled by a court of equity to hold the same in trust for the benefit of the deceased ; by a stronger reason, a court of equity would compel this quasi trustee to forego all personal advantage derived from this renewal, obtained by him clandestinely while in charge of the premises as agent and steward

of the estate. While it may be considered that the wish to aid his son-in law, and to act impartially between his children, largely influenced the conduct of the defendant Crook, yet, however meritorious such motive may be in itself, he cannot equitably use the renewed lease, a graft into the old one, which had been assigned by himself to his son, for any such purpose, without the consent of the cestui que trust, nor as an instrument for creating, by compulsion, a joint interest therein between the widow and child of his deceased son and his son-in-law, an arrangement entirely distasteful to the representatives of the deceased son.

Nor can the defendant Crook escape the operation of the rule upon the excuse that the administrator had no power to continue the business, and in consequence had neither the power nor the capacity to take a new lease; if taken, the renewed lease might have been sold by the administrators with the other assets and property.

Conceding the fact that the administrators have not wound up the business of Crook, Junior, the maxim "that he who comes into a court of equity must come clean-handed" would not apply to the present case. All the cases justly hold that the inequity of the plaintiff will not bar his right to equity if the refusal to grant equitable relief will work injury to the independent rights of others, who are innocent of the plaintiff's wrong (Eastabrook v. Scott, 3 Ves. Jr. 456; Cullingworth v. Loyd, 2 Beav., 385, 390; Bellamy v. Bellamy, 6 Fla. 62, 103).

So much of the relief demanded by the plaintiffs in their complaint, as may be granted under the facts, will constitute the plaintiffs the representatives of the beneficial owners of the renewed lease. And they will be entitled to hold such interest and all its advantages and to enforce the same, as the representatives of and for the benefit of the estate of the dead man, and they will be accountable to the next of kin for their use or misuse of the assets committed to their charge, and any illegal use of this asset could be restrained by those really interested. The next of kin are the

real parties in interest; they were the cestuis que trustent of the defendant S. H. Crook, Senior, and their rights are so inextricably interwoven with those of these plaintiffs, that a denial of the relief sought would sweep over the heads of the parties of whom complaint is here made, to injure the innocent.

And it must not be forgotten, as already stated, that the lease taken by the defendant Crook is not a new creation. And this being the case, it is immaterial whether the administrators could or could not have renewed the original lease. The lease taken by Crook, Senior, became, at the moment of its execution, an asset of the estate of Crook, Junior, and the administrators possessed the same right to the renewal lease which they had to the original lease (Clegg v. Fishwick, 1 *Mac. & G.* 294; Clements v. Hall, 2 *De G. F. & J.* 128).

But it does not seem to me proper, or necessary, as the plaintiffs ask, to direct that the defendant Crook should absolutely assign the renewal lease to the administrators of the estate of the deceased son.

The rights of the parties in interest, and for whom it must be decided that the defendant Crook was acting, when he took the renewed term, can be well preserved, and effectually realized, without placing the legal title in the administrators.

The defendant Crook, although named as lessee, must, from his peculiar and confidential relation to his son, and the business conducted under the original lease, which he had himself assigned to his son, be regarded, upon the principles announced in the cases above cited, and others to which they refer, as holding the lease by a constructive trust for the persons interested in the old lease. For, although the lessor even "refused to renew the lease for the benefit of the cestui que trust, and the trustee takes it in his own name, he is still a constructive trustee, and he must account for all the income and profits" (*Perry on Trusts*, § 196).

Crook v. Crook.

. And the judgment for the plaintiffs in this case must be that the renewed lease in the hands of the defendant Crook, which is shown to be of large value, much of which arises from the business carried on by the deceased son, is chargeable with a trust in favor of the estate of the deceased son, and that the defendant Crook holds the same to the use of that estate, and is accountable to the plaintiffs as the representatives thereof, for the value, profits and advantage thereof, and for any loss or damage growing out of any misuse thereof.

---

* The relief given was stated in the judgment as follows:

ORDERED and ADJUDGED that the said defendant S. H. C. took and held and now holds said lease bearing date        18  , made by J. S. B. to S. H. C. of the premises Number                     street in the city of New York, as trustee thereof, and in trust for the benefit and behoof and to the use of the said plaintiffs M. F. C. as administratrix, and J. S. as administrator of the goods, chattels and credits of S. H. C., Junior, deceased, subject to the effect of the covenants therein contained:

That said defendant S. H. C. as such trustee is accountable to said plaintiffs as such administratrix and administrator as representatives of said estate of said S. H. C., Junior, deceased, for the value, profits and advantage thereof, and for any loss or damage growing out of any misuse thereof:

That inasmuch as said defendant J. S. B. has applied for such relief, that said complaint be dismissed as to him, but without costs, and also as to said defendant S. H. C., Junior, without costs, and that M. F. C., administratrix, and J. S., administrator of the goods, chattels, and credits of S. H. C., Junior, deceased, plaintiffs, recover of the defendant S. H. C. the sum of                     dollars, and cents, costs, and that the plaintiffs have execution therefor.