Cullen, J.
This is an appeal from a judgment in favor of the plaintiffs entered upon a decision of the Special-. Term. The action is a peculiar one, and we have been somewhat at a loss to determine in what character it is to be-considered. The plaintiffs claimed to hold a policy of fire insurance, issued by the defendant company in favor of the defendant Bartlett, on the latter’s stock, as security for a loan, made to Bartlett. A loss occurred. Bartlett denied the pledge of the policy to the plaintiffs. This action was-thereupon brought, and the relief sought was not to recover the amount of the loss, but to have plaintiffs declared entitled to receive the moneys due on the policy, and to-restrain the defendants from paying such moneys to Bartlett or to any one else than the plaintiffs. Bartlett answered, denying the pledge. The company answered denying knowledge of the pledge, and alleged that one Kelly of Iowa was the owner by a paramount assignment from Bartlett. It further answered that the assignment to the plaintiffs violated one of the conditions of the policy, and for-this reason asked as a counter-claim that the policy be. adjudged void.
On the company’s motion, Kelly was made a party defendant ; being a non-resident, he was served by publication, but he never appeared in the action. On the trial the plaintiffs established their claim against Bartlett and the pledge of the policy, but no proof was given as to the extent of the loss nor of its adjustment. The court gave the *444 relief prayed for, and from the judgment the defendant Insurance company alone has appealed.
It seems settled by authority that to an action on a pledged policy, the pledgor as well as the pledgee, is a necessary party (Griffey v. N. Y. Central Ins. Co., 100 N. Y. 417; citing Simson v. Satterlee, 64 Id. 657; Bard v. Poole, 12 Id. 495).
The cases last mentioned were foreclosures of pledged mortgages. In Bard v. Poole, the reason of the nile is ¡stated to be that the general owner might be able to show the debt had been paid. The plaintiffs as pledgees might have maintained a suit at law on the policy, joining the pledgor as plaintiff, or if the latter refused to become plaintiff, making him a party defendant. As Bartlett denied the pledge, there would have been two entirely independent issues to be tried, the pledge by Bartlett and the liability of the company. A pledgor has always the right to go into equity to foreclose his pledge. The pledge in this case being a chose in action, it should be collected, not sold, to ■satisfy the debt (Wheeler v. Newbould, 16 N. Y. 392).
We, therefore, see no objection to an action in equity having its purpose merely to establish the right of the plaintiffs to recover any amount due on the chose in action, leaving the liability on the chose in action to be determined in a subsequent suit at law. The defendant insurance company raised no objection to the equitable jurisdiction, but on the contrary sought affirmative relief in its own behalf in that jurisdiction. We shall, therefore, treat the action as merely determining the right to the benefits of the policy, •and not as adjudging any liability of the defendant company •except so far as that defendant by its own action in asking affirmative relief, put such liability in issue. In this view ■of the case it was not necessary to prove upon the trial the ■extent of the loss or the presentation of proofs of loss.
The principal objection against the judgment below urged by the defendant company is that the court did not -acquire jurisdiction of the defendant Kelly, and that there *445 fore the judgment so far as it restrains Kelly from collecting the insurance moneys, or suing the company therefor, is. void. But Kelly does not appeal from the judgment, and the company have no standing to complain of it in this respect, except so far as it may be entitled by a valid judgment to be protected from any claim on Kelly’s part. Had the plaintiff brought a suit at law on the policy, it would not have been a defence to show that Kelly claimed to own the policy. It would have been necessary for the defendant to go further and show that Kelly did own it, or at least that the plaintiff did not. In a proper case the defendant might have an interpleader. But if one of the claimants, was beyond the jurisdiction of the court, the defendant would labor under the same embarrassment as in this case, nor do we see how it would be relieved from it. It would have to show not only the foreign claim, but its validity. Any other rule would defeat the enforcement of liability in our courts, where there was a foreign claimant. The policy was not negotiable, and Kelly could not obtain any greater-rights to the policy than his assignor Bartlett.
The evidence clearly established the pledge of the policy to the plaintiffs long anterior to the assignment to Kelly, which latter was not until four days after the commencement of this suit. The rights of the plaintiffs are therefore-paramount to those of Kelly, and we must assume that it will be so held in Iowa.
It is next claimed that the policy became void by the assignment to the plaintiffs. That assignment was merely as a pledge to secure the payment of a debt. Griffey v. N„. T. Central Ins. Co. (supra) is conclusive to the effect that such an assignment does not avoid the policy.
Lastly, it is contended that the decree goes beyond the-pleadings in awarding absolute judgment against the company on the policy. We do not so construe the decree. It is adjudged that the company pay the plaintiffs “ such moneys as shall be found due and payable under and by virtue of the policy.” It does not determine what moneys, *446 or that any moneys are due on the policy. It simply adjudges plaintiff’s right to the policy, at whatever value it may be.*
We think the case properly determined, and that the judgment appealed from should be affirmed with costs.
Van Beunt, P. J., concurred.
*447 Note on Actions to Declare a Eight.
The English courts sometimes sustain equitable actions to ■ declare the rights of the parties, although no substantial relief is sought, it appearing to be the policy of their law within equitable limits to allow parties to a controversy to have a question of right thus determined, so that they may govern themselves accordingly. American courts, on the other hand, with rare exceptions, decline to entertain such actions. At first 'blush it may be thought that the case in the text is new in this respect. But rightly considered, the case, although a novel one, does not appear to transcend the American rule ; for it is to be observed that immediate equitable relief was sought, viz. : The prevention of obligor in a claim that seems to have been unliquidated (and perhaps by the terms of the policy, only liquid atable by arbitration) from adjusting the amount with and paying the claim to an alleged wrongful claimant, who had, perhaps, an apparent legal right, but whose circumstances were so precarious as to imperil plaintiff's rights if payment to him were made. The practical importance of this decision seems to be somewhat enhanced by the rules which govern the remedy of a creditor or claimant whose demand is paid to a wrongful claimant. Under those rules, which are fully stated in a note on the right of election at page 145 of this volume, if the rightful claimant waits until after payment to the wrongful claimant has been made, he may find himself compelled to elect to sue one party to exclusion of the other, and if he succeeds in recovering judgment, even though it prove fruitless on execution, he may be barred from seeking redress against the other party.
The chief other classes of cases (apart from the recognized 'head of suits to prevent a multiplicity of actions) in which American courts sustain action to establish a right without granting any other present relief are actions to obtain instructions of a trustee in respect to his duty (see 5 Abb. N. C. 346, et seq.) and actions that determine a confusion of boundaries. The following cases illustrate the various phases of the subject:

Notes of Oases.

1. The general doctrine of the American courts is that an action to declare the rights of the parties, without granting any relief, is not sustainable where the circumstances appear to be such that another action would be necessary to give any effect to those rights. Micou v. Ashurst, 55 Ala. 607.
*448 2. In Hobart College v. Fitzhugh, 27 N. Y. 130, it was held that a legatee cannot maintain an action simply to ascertain the meaning of a will in advance of the legacy being due, or without demanding judgment for the legacy. This was put upon the ground that the parties only asked an opinion, and that no rights were claimed in the-case [submission of controversy on agreed facts], and that none existed. The controversy existed between the parties that might, then be the subject of a civil action in which a judgment could be-rendered.
3. Baylies v. Payson, 5 Allen, 473, 489, was a bill to establish a trust upon evidence that "defendant, an executor and residuary legatee, had proposed to the heirs, plaintiffs, and agreed with them upon, a compromise of litigation as to the validity of the will, upon terms requiring him to relinquish and pay to them one half his interest under the-will.
The court, after holding the evidence sufficient, stated the rule as. to an action demanding only a declaration of right, as follows :
“ The plaintiffs contend that it could be maintained for the purpose-of declaring the trust; but we do not think the mere declaration of a trust, where it consists merely of deciding that a certain contract has been made, and that it creates a trust, is a sufficient ground for maintaining a suit. Nor is it sufficient, even if the defendant denies that he made the contract, if the denial is not fraudulent. .
“ But the bill contains an allegation that he is about to depart out of the limits of the United States to some foreign country, and this allegation is [not] denied. There is no prayer.for any specific relief on-account of this fact, such as is usual in such cases, but merely the-general prayer for relief. And all that seems to be proper is, that the trust shall be declared in conformity with the opinion herein stated, and the bill retained for further direction ; for when a trustee is about, to leave the country, a court of equity will give such protection to the interests of the cestui que trust as the exigency of the case may require, and will retain a bill for future action.”
The adjudicating part of the decree was settled as follows :—“The court ... do find and declare that a concluded agreement was made between the plaintiffs on the one part and the defendant on the other-part, as is stated in the said bill, the terms whereof appear in and by the letter of the defendant of the date of April 24, A. D. 1860, which is set out in the said bill, and that the plaintiffs are entitled to-the specific performance thereof, and that by force of the said agreement the defendant became charged with the trust of executing the said agreement; and that the defendant, being about to leave the United States, without an intention to return, and having actually *449 departed into foreign parts soon after the filing of the bill, and the plaintiffs being remediless by reason thereof save by the said bill, the court doth retain the same for the purpose of giving the relief to which the plaintiffs are justly entitled. And it is ordered that the plaintiffs have leave to apply to the court for such further directions as may be needful to compel the specific performance of the said trust.
The parties thereupon filed a written agreement, stating that the damages to which the plaintiffs were entitled under the foregoing decree were agreed to be $22,174.19, including costs; and a further decree was made, reciting the above agreement, and ordering and decreeing that the said sum is the amount which the plaintiffs are entitled to recover, and that the defendant pay the same.”
4. Cohen v. N. Y. Mutual Life Ins. Co., 50 N. Y. 610; s. c., 10 Am. R. 622. The defendant, the insurance company, had declared that a life policy, held by plaintiff, payable on the death of her husband (who was still living), had been forfeited by default, and refused to receive further premiums. She sued, stating excuse for the default, and asked as relief that she might be permitted to make the payments, and that her policy be declared valid, or that defendant be compelled to pay back to her all sums paid upon the policy, with interest, and all dividends declared under the policy, or for such other and further relief, etc.
On demurrer, the defendant objected to the right of plaintiff to maintain an action at this time, there having been no loss, and therefore no cause of action upon the policy.
The court say :—“ This is a peculiar case ; and there are many reasons, unless there is some rigid rule forbidding the court to entertain jurisdiction, why it should determine the matters in controversy at this time. 1. There is an actual controversy existing, and the only parties to it are before the court. There is not the reason for declining jurisdiction that presented itself in some of the cases cited by the-defendant, as in Grove v. Bastard (2 Phi. [Eng. Ch. 22], 619), that alls the parties in interest could not be heard and their rights determined. 2. Present rights, under the policy and incident to it, are denied the-plaintiff. Her policy having been declared forfeited and canceled, she is excluded from the privileges and denied the rights which; belong to her as a member of the company. She is entitled, unless; the claim of the defendant is well grounded, at once and at all times, to the privileges of other policy-holders, and to be recognized as such.. 3. The plaintiff is entitled, if the right to pay the premiums and continue the policy still exists, to pay the arrearages and stop the accruing of interest, and to make the future payments as they accrue andi *450 become due without interest, and relieve herself as well of the risk and burden of retaining the money, which of right belongs to the defendant. 4. The contract of insurance, where the policy is to be kept alive by periodical payments, is peculiar, and the duty to pay and the obligation to receive are mutual. It is somewhat different from a simple obligation to pay money, a tender to perform which would bar an action upon it. So, too, a receipt or acknowledgment of the payment is customarily given, and is as essential as evidence of the continuance of the contract as is the original policy. The policyholder is entitled to some evidence of the performance of the condition on his part, if, as is believed, the universal usage is for the insurers to certify in some way the fact that the annual premiums are paid. 5. It is fit and proper that both parties to the contract should know their rights; especially is it important to the plaintiff and the insured that, if this policy is avoided, they may seek insurance elsewhere, and, if valid, that they may perform the conditions of the policy.
“In ordinary cases courts will not, in advance of any duty, obli.•gations or default, declare the rights and obligations of suitors ; they will do it where peculiar circumstances render it necessary to the preservation of right.”
5. In Crook v. Crook, 20 Abb. N. C. 249, it was held by the late ■ex-judge Van Yobst, as referee, that one who having assigned as a gift ■to his son a lease, after the son’s subsequent death took a renewal iin his own name, was not entitled to hold it, but could be charged as trustee of the renewal for the benefit of the son’s estate, and he held that an assignment of the renewal was not necessary, but a judgment declaring that he took it, chargeable with such a trust and held it for the estate, and should be accountable for its value and for any loss arising out of its misuse, was a proper and sufficient remedy. The adjudicating part of the judgment is given at page 258.
6. Prichitt v. Kirkman, 2 Term. Oh. 390. Held that the court cannot construe a deed and declare future rights if the parties who may be entitled in remainder are not before it, and there is no trustee asking for instructions for his protection ; nor will it, as a general rule, declare future rights.
7. An action lies in equity in case of a confusion of boundaries of lands, to ascertain and fix the boundaries, and prevent a multiplicity of suits, when, by the deeds, or by the owners or occupants of the lands, the boundaries cannot be ascertained with reasonable certainty by one party alone, or except by the judgment or opinions of men after an examination of the deeds, and the premises with a surveyor, aided perhaps by the examination of witnesses. And it is not essen *451 dial that the confusion should have happened through the fault of •defendant. So held in a case of peculiar equity and necessity [reviewing authorities], Boyd v. Dowie, 65 Barb. 237; s. p., Rhode Island v. Massachusetts, 12 Pet. 657.
8. In Williams v. Hagood, 98 U. S. 72, it was held that where the ■question presented to the court by a bill in equity is merely an abstract one, and the bill shows no equity in the complainant, it must be ■dismissed.
Strong, J., delivering the opinion of the court, said of the bill: “ Its object is plainly to obtain from this court a declaration that the legislative acts of Oct. 22, and Dec. 22, 1873, are unconstitutional, because impairing the obligation of the contract made by the act of 1872, and the certificates thereby authorized and thereunder issued, and this without any averment that the complainant will be injured by them. The question presented to the court is, therefore, merely an abstract one; such a one as no court can be called upon to decide, and ■the bill shows no equity in the complainant. Hence it was properly ■dismissed in the court below, and it must be dismissed here, but without prejudice to the complainant’s right to bring and prosecute another suit, when he shall be in a condition to exhibit any equity in himself.”
9. Cross v. Valle, 1 Wall. 1, 17, 515. A court of chancery will ■not maintain a bill merely to declare future rights. The court say that this power, exercised by the Scotch courts, is disavowed by the English courts (citing Grove o. Bastard, 2 Phill. 621; Langdale v. Briggs, 36 Eng. L. & Eq. 214). But this statement of the English law is qualified by saying that the cases of protecting a remainderman against waste, establishing an equitable remainder by implication, and giving ■instructions to- trustees, are regarded as apparent but not real exceptions to. the general rule.
10. Osborn «. Bank of United States, 9 Wheat. 738. A court of •equity will interpose by injunction to prevent the transfer of a specific thing, such as negotiable securities and stocks, which, if transferred, will be irretrievably lost to the owner. Hence a bill lies against a State auditor and treasurer to enjoin their paying away securities and coin seized under color of enforcing a tax.
11. Magauran v. Tiffany, 62 How. Pr. 251. It seems, that an action may be sustained for the purpose of obtaining a judicial determination ■as to the existence of a trust, so as to prevent a sale of the fund, •although a case for an accounting be not made.
12. Memphis, etc. R. R. Co. v. Greer, 4 Law S. Ann. 858; s. c., 11 Southwestern Rep. 931. A freight conductor recovered judgment against the company for $8,000 damages for personal injuries he received -in their service. By the same casualty, a person whom the conductor, *452 in violation of known rules of the company, had allowed to be riding; on the train, was also injured, and he sued the company for $5,000 damages. Held that, the conductor being insolvent, the company could maintain a suit in equity to enjoin the collection of his judgment, to the amount sued for by the passenger, until that suit was decided, and for a decree that if judgment should be rendered against th& company therein, it should be satisfied out of the judgment recovered by the conductor. Such a suit , was not deemed as against a co-tortfeasor for contribution, but against an agent for breach of the contract, of agency. And it might be sustained on the ground of equitable; set-off, though the claim by the passenger against the company was not. yet determined and fixed, but was being contested by the company. Defendant being insolvent, the bill might also be sustained as a bill quia timet, to prevent irreparable injury.

 The adjudicating part of the decree was as follows:
“ Qbdbbbd, adjudged and decreed that the defendants, Charles H. ■Bartlett and Samuel G. Kelly, their agents, attorneys, and all persons acting in their behalf, be, and they hereby are, restrained and enjoined from receiving or in any manner intermeddling with the moneys or •funds secured by the policy of insurance No. 1,300,833, issued by the Norwich Fire Insurance Society, on the 21st day of April, 1886, or from bringing any suit or action for the recovery of said money or moneys, or any part thereof.
II. “That the defendant, the Norwich Union Fire Insurance Society be, and hereby is directed to refrain from delivering or paying ■over any moneys on said policy of -insurance to the said -Charles H. Bartlett or Samuel G. Kelly, their servants or agents, or to any agent or representative of the said defendants, Bartlett or Kelly, or to any other person than these plaintiffs.
III. “ That the temporary injunction heretofore granted in this ■action be, and the same is hereby made permanent as against the defendants, the Norwich Union Fire Insurance Society, Charles H. Bartlett and Samuel G. Kelly, and each of them.
IV. “That the said defendant society be, and hereby is restrained and enjoined from paying any draft or other instrument pertaining to, and relating to, said policy of insurance drawn upon said defendant ■society, by any agent or representative of said society, or by the defendant, Charles H. Bartlett, or Samuel G. Kelly, their agents, ^attorneys, or assigns, to any other than these plaintiffs.
V. “ It is further ordered and decreed that the said defendant society pay to the plaintiffs such moneys as shall be found payable ■under and by virtue of the policy of insurance issued by the defendant society, and No. 1,300,833, covering property as set forth in said .policy, and described as follows[description.]
YI. “ That the plaintiffs have judgment against the defendants, Charles H. Bartlett and Samuel G. Kelly, for the sum of $246.12 costs ;as taxed.”